PREET BHARARA
United States Attorney
Southern District of New York
By:   TARA M. La MORTE
       ARASTU K. CHAUDHURY
       Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel. No. (212) 637-2746
Fax No. (212) 637-2702
tara.lamorte2@usdoj.gov
arastu.chaudhury@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| DAVID GOODMAN, MICHAEL DOHERTY, and ROBERT D. BLACK, Individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | **FIRST AMENDED COMPLAINT-CLASS ACTION** |
| - against - | 10 Civ. 5236 (RJS) |
| CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, and NEW YORK CITY POLICE PENSION FUND, | **ECF CASE** |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

   Plaintiffs David Goodman ("Goodman"), Michael Doherty ("Doherty"), and Robert D. Black ("Black"), on behalf of themselves and a class of similarly situated persons, by and through undersigned attorneys, allege as follows:

   1.   This civil action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 ("USERRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b) and 28 U.S.C. § 1331.

3. Venue is proper in this district under 38 U.S.C. § 4323(c)(2) because defendants City of New York ("NYC"), New York City Police Department ("NYPD") and New York City Police Pension Fund ("Pension Fund") maintain their principal place of business in this district. Additionally, venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district.

## PARTIES

4. Goodman is a retired officer of the NYPD who resides in New York, New York, within the jurisdiction of this Court.

5. Doherty is a retired officer of the NYPD who resides in Lindenhurst, New York.

6. Black is a retired officer of the NYPD who resides in Levittown, New York.

7. NYPD is located within the jurisdiction of this Court and is an employer within the meaning of 38 U.S.C. § 4303(4)(A) and 38 U.S.C. § 4323(i). NYPD is an agency of NYC.

8. NYC is located within the jurisdiction of this Court and is an employer within the meaning of 38 U.S.C. § 4303(4)(A) and 38 U.S.C. § 4323(i).

9. Pension Fund is located within the jurisdiction of this Court and is an employer within the meaning of 38 U.S.C. § 4303(4)(C) and 38 U.S.C. § 4323(i). Pension Fund is an agency of NYC that, pursuant to the Administrative Code of the City of New York, has the powers and privileges of a corporation.

FACTUAL ALLEGATIONS

10. The Pension Fund operates pursuant to Title 13 of the Administrative Code of the City of New York. The Pension Fund is responsible for, *inter alia*, performing pension payment calculations on behalf of its members, which include members of the police force.

11. As calculated by the Pension Fund, pensionable earnings include overtime compensation and night shift differential compensation that members earn. Pensionable earnings serve as the basis for members' annual pension benefit.

12. Based on past practice and policy of the NYPD, it is reasonably certain that NYPD officers who work hours falling within a night shift will earn night shift differential pay, although the amount of night shift differential pay that an individual officer will receive may not be reasonably certain. Based on past practice and policy of the NYPD, it is reasonably certain that NYPD officers will earn overtime compensation, although the amount of overtime compensation that an individual officer will receive may not be reasonably certain.

13. To determine the pensionable earnings of members who are NYPD officers and are absent from NYPD employment to perform active military service in the uniformed services, the Pension Fund must impute and calculate the pensionable earnings the officers would have had during their periods of military service as if those officers had remained continuously employed.

14. In performing the computations described in paragraph 13 of this Complaint, the Pension Fund did not rely upon members' average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding members' respective period(s) of military service (or, if shorter, the period of employment immediately

preceding such period). Nor did the Pension Fund otherwise rely upon the compensation, including overtime and/or night shift differential pay, members would have earned but for their respective period(s) of military service.

15. NYPD is responsible for making pension contributions to the Pension Fund on behalf of the Pension Fund's members. The NYPD was responsible for making pension contributions on members' behalf based upon their pensionable earnings, including during their period(s) of active military service. However, the NYPD's contributions were not based upon the average rate of compensation, including overtime hours and night shift differential pay, members received during the 12 months immediately preceding each of their respective periods of military service (or, if shorter, the period of employment immediately preceding such uniformed service). Nor were they otherwise based upon the compensation, including overtime and/or night shift differential pay, members would have earned but for their respective period(s) military service.

16. NYC also is responsible for making pension contributions to the Pension Fund on behalf of the Pension Fund's members. NYC was responsible for making pension contributions on members' behalf based upon their pensionable earnings, including during their period(s) of active military service. However, the NYPD's contributions were not based upon the average rate of compensation, including overtime hours and night shift differential pay, members received during the 12 months immediately preceding each of their respective periods of military service (or, if shorter, the period of employment immediately preceding such uniformed service). Nor were they otherwise based upon the compensation, including overtime and/or night shift differential pay, members would have earned but for their respective period(s) of military service.

David Goodman

17. Goodman has been a member of the United States Army Reserves since 1981 and currently holds the rank of Lieutenant Colonel.

18. In 1992, Goodman began work at the NYPD. From May 11, 1999 to his retirement on July 28, 2009, he held the position of Detective, third grade.

19. On March 12, 2002, NYPD assigned Goodman to the counterterrorism division. On September 12, 2008, NYPD assigned Goodman to the Office of Emergency Management.

20. Since 1981, Goodman has performed his Army Reserve duties and has been called to active duty on multiple occasions. For example, from March 5, 2002 to March 4, 2003, he was ordered to active duty in support of Operation Enduring Freedom. From March 7, 2004 to September 27, 2004, he was ordered to active duty and served a portion of this time in Afghanistan. From November 15, 2005 to May 13, 2006, he was ordered to active duty and deployed to Jordan to help train Iraqi counterterrorism forces. From October 27, 2008 to April 23, 2009, he was ordered to active duty during which time he served on a joint task force in Iraq.

21. Throughout the time of his employment with NYPD, including but not limited to the 12 months preceding each of his periods of active military service, Goodman worked overtime hours, for which he was compensated. The NYPD compensated Goodman for most of his overtime work by cash payments. For other overtime hours worked, NYPD compensated Goodman with additional leave. The amount of compensation Goodman earned for working overtime hours depended upon, *inter alia*, the time of day Goodman worked overtime hours.

22. During the periods of Goodman's active military service, NYPD employees had the opportunity to work, and did work, overtime hours. Had Goodman not been performing

active military service, he would have been working overtime hours for NYPD.

23. Throughout the time of his employment with NYPD, including but not limited to within the 12 months preceding each of his periods of active military service, Goodman worked hours entitling him to night shift differential compensation.

24. During the periods of Goodman's active military service, NYPD employees had the opportunity to work, and did work hours entitling them to payment of night shift differential. Had Goodman not been performing active military service, he would have earned night shift differential pay.

25. Goodman is a member of the Pension Fund. Since his retirement from the NYPD on July 28, 2009, Goodman is entitled to receive, and has been receiving, an annual pension paid in equal monthly installments.

26. The Pension Fund must compute Goodman's compensation during his periods of active military service in order to determine Goodman's pensionable earnings, which serves as the basis for Goodman's annual pension benefit.

27. In performing the computations described in paragraph 26 of this Complaint, the Pension Fund did not rely upon Goodman's average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period). Nor did the Pension Fund otherwise rely upon the overtime and/or night shift differential pay Goodman would have earned but for his military service.

28. The NYPD was responsible for making pension contributions on Goodman's behalf based on his pensionable earnings, including during the periods of Goodman's active

military service.  The NYPD's contributions with respect to Goodman's periods of active military service were not based upon Goodman's average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period).  Nor were they otherwise based upon the overtime and/or night shift differential pay Goodman would have earned but for his military service.

29. NYC also was and is responsible for making pension contributions on Goodman's behalf based on his pensionable earnings, including during the periods of Goodman's active military service.  NYC's contributions with respect to Goodman's periods of active military service were not based upon Goodman's average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period).  Nor were they otherwise based upon the overtime and/or night shift differential pay Goodman would have earned but for his military service.

30. The acts and practices of the NYC, NYPD and the Pension Fund, set forth in paragraphs 10-29, violated Section 4318 of USERRA, with respect to Plaintiff Goodman.

Michael Doherty

31. Doherty joined the United States Coast Guard Reserves in 1987, and retired in 2007.

32. In 1984, Doherty began work at the NYPD.  From July 1997, to his retirement on January 4, 2004, he held the position of Detective, third grade, and was assigned to Brooklyn South Night Watch, where he handled major crimes.

33. Since 1987, Doherty has performed his U.S. Coast Guard Reserve duties and has been called to active duty. For example, from January 28, 2003 to August 11, 2003, Doherty was mobilized in support of Operation Enduring Freedom. He was reactivated from February 2, 2004 to January 27, 2007. Doherty earned a number of awards and commendations for his U.S. Coast Guard Reserve service.

34. Throughout the time of his employment with NYPD, including but not limited to the 12 months preceding each of his periods of active military service, Doherty worked overtime hours, for which he was compensated. The NYPD compensated Doherty for his overtime work by either cash payments or additional leave, at Doherty's discretion. The amount of compensation Doherty earned for working overtime hours depended upon, among other things, the time of day Doherty worked overtime hours.

35. During the periods of Doherty's active military service, NYPD employees had the opportunity to work, and did work, overtime hours. Had Doherty not been performing active military service, he would have been working overtime hours for NYPD.

36. Beginning in 1997, Doherty was assigned an overnight tour of duty, which required him to work between the hours of 11:00 p.m. and 8:00 a.m. Doherty earned night shift differential pay for performing this tour of duty. Had Doherty not performed active military service, he would have earned night shift differential pay from the NYPD. Upon returning to employment with NYPD following his active military service, Doherty was ultimately reassigned to Brooklyn South Night Watch, where he resumed his overnight tour of duty.

37. Doherty is a member of the Pension Fund. Since his retirement from the NYPD on January 4, 2004, Doherty is entitled to receive, and has been receiving, an annual pension paid

in equal monthly installments.

38. The Pension Fund must compute Doherty's compensation during his periods of active service in order to determine Doherty's pensionable earnings, which serves as the basis for Doherty's annual pension benefit.

39. In performing the computations described in paragraph 38 of this Complaint, the Pension Fund did not rely upon Doherty's average rate of compensation, including overtime hours and night shift differential pay, during the 12-month period immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period). Nor did the Pension Fund otherwise rely upon the overtime and/or night shift differential pay Doherty would have earned but for his military service.

40. The NYPD was responsible for making pension contributions on Doherty's behalf based on his pensionable earnings, including during the periods of Doherty's active military service. The NYPD's contributions with respect to Doherty's periods of active military service were not based upon Doherty's average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period). Nor were they otherwise based upon the overtime and/or night shift differential pay Doherty would have earned but for his military service.

41. NYC was and is responsible for making pension contributions on Doherty's behalf based on his pensionable earnings, including during the periods of Doherty's active military service. NYC's contributions with respect to Doherty's periods of active military service were not based upon Doherty's average rate of compensation, including overtime hours

and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period). Nor were they otherwise based upon the overtime and/or night shift differential pay Doherty would have earned but for his military service.

42. The acts and practices of the NYC, NYPD and the Pension Fund, set forth in paragraphs 10-16 and 31-41, violated Section 4318 of USERRA, with respect to Plaintiff Doherty.

Robert D. Black

43. Black joined the United States Coast Guard Reserves in 1990.

44. In 1984, Black began work at the NYPD. On October 27, 2000, Black was promoted to Sergeant, and was assigned to the NYPD's Forensic Unit in Jamaica, Queens. Black retired from the NYPD on or about December 12, 2004.

45. Since 1990, Black has performed his U.S. Coast Guard Reserve duties and has been called to active duty. For example, from March 10, 2003 to August 12, 2003, Black was mobilized in support of Operation Enduring Freedom.

46. Throughout the time of his employment with NYPD, Black worked overtime hours, for which he was compensated. The NYPD compensated Black for most of his overtime work by cash payments. The amount of compensation Black earned for working overtime hours depended upon, among other things, the time of day Black worked overtime hours.

47. During the periods of Black's active military service, including but not limited to the 12 months immediately preceding each of his periods of active military service, NYPD employees had the opportunity to work, and did work, overtime hours. Had Black not been

performing active military service, he would have been working overtime hours for NYPD.

48. Black is a member of the Pension Fund. Since his retirement from the NYPD on December 12, 2004, Black is entitled to receive, and has been receiving, an annual pension paid in equal monthly installments.

49. The Pension Fund must compute Black's compensation during his periods of active service in order to determine Black's pensionable earnings, which serves as the basis for Black's annual pension benefit.

50. In performing the computations described in paragraph 49 of this Complaint, the Pension Fund did not rely upon Black's average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period). Nor did the Pension Fund otherwise rely upon the overtime and/or night shift differential pay Black would have earned but for his military service.

51. The NYPD was responsible for making pension contributions on Black's behalf based on his pensionable earnings, including during the periods of Black's active military service. NYPD's contributions with respect to Black's periods of active military service were not based upon Black's average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period). Nor were they otherwise based upon the overtime and/or night shift differential pay Black would have earned but for his military service.

52. NYC was and is responsible for making pension contributions on Black's behalf based on his pensionable earnings, including during the periods of Black's active military service. NYC's contributions with respect to Black's periods of active military service were not based upon Black's average rate of compensation, including overtime hours and night shift differential pay, during the 12 months immediately preceding each of his periods of military service (or, if shorter, the period of employment immediately preceding such period). Nor were they otherwise based upon the overtime and/or night shift differential pay Black would have earned but for his military service.

53. The acts and practices of the NYC, NYPD and the Pension Fund, set forth in paragraphs 10-16 and 43-52, violated Section 4318 of USERRA, with respect to Plaintiff Black.

53. The acts and practices of the NYC, NYPD and the Pension Fund, set forth in paragraphs 10-16, 25-29, 37-41, and 48-52, violated Section 4318 of USERRA, with respect to named Plaintiffs Goodman, Doherty, and Black, and a class of similarly situated current and retired NYPD officers who were called to active military duty during the time of their employment with the NYPD. Defendants violated USERRA, among other ways, by failing to calculate Pension Fund members' compensation for pension purposes during periods of military service in accordance with the statutory commands.

54. Defendants' violations are ongoing. As a result of the ongoing statutory violations committed by NYC, NYPD and the Pension Fund, Goodman, Doherty, Black, and a class of similarly situated current and retired NYPD officers who were called to active military duty during the time of their employment with the NYPD, suffered or will suffer the loss of pension benefits in an amount to be determined at trial.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.  For purposes of Rule 23(b)(2), Plaintiffs bring this action on behalf of all current and retired NYPD officers who performed or will serve on active military service since September 11, 2001, during the time of their employment with the NYPD.  For purposes of Rule 23(b)(3), Plaintiffs bring this action on behalf of a sub-class of all retired NYPD officers who performed active military service since September 11, 2001, during the time of their employment with the NYPD.  Plaintiffs are members of the class and sub-class they seek to represent.

56.     The members of the class and sub-class are sufficiently numerous that joinder of all members is impracticable.  Upon information and belief, the class contains more than 40 current and retired officers.  Upon information and belief, the sub-class also contains more than 40 retired officers.

57.     There are questions of law and fact common to both the class and sub-class, including, without limitation, whether Defendants, in calculating the pensionable earnings of NYPD officers called to active military service, have failed to account for the overtime and/or night shift differential pay that those officers reasonably could have expected to receive had they not been performing active military duty; and whether Defendants' failure to do so constitutes a violation of USERRA.

58.     The claims alleged by Plaintiffs are typical of the claims of the class and sub-class.

59.     The named Plaintiffs will fairly and adequately represent and protect the interests

of the class and sub-class.

60. Undersigned counsel will fairly and adequately represent the interests of the class and sub-class.

61. Class certification of Plaintiffs' and class members' requests for declaratory and injunctive relief is appropriate pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the class, making appropriate declaratory and injunctive relief to Plaintiffs and the class as a whole. Plaintiffs and class members are entitled to a declaration that Defendants' acts and practices are unlawful; a declaration that 38 U.S.C. § 4318 preempts any and all inconsistent NYC, NYPD, and Pension Fund rules, regulations, policies, and practices concerning the calculation of pensionable compensation during periods of military service and the calculation of pension benefits; and an injunction requiring Defendants to perform pension calculations in accordance with USERRA.

62. Class certification of Plaintiffs' and sub-class members' requests for an order that the Pension Fund recalculate compensation during periods of military service in accordance with USERRA, 38 U.S.C. § 4318; inform Plaintiffs and sub-class members of pension contributions they may owe as a result of such recalculation; and that Defendants remit to Plaintiffs and sub-class members the additional pension benefits owed to them as a result of recalculating compensation during their periods of military service in accordance with USERRA, 38 U.S.C. § 4318, is appropriate pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Questions of law and fact common to the putative sub-class in this action predominate over individual questions affecting only individual members of the class, and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit.

REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the class, respectfully request that the Court enter judgment against NYC, NYPD, the Pension Fund, and their respective officers, agents, employees, successors and all persons in active concert or participation with it, as follows:

A. Determine that this action may proceed and be maintained as a class action, designating Plaintiffs as Lead Plaintiffs, certifying Plaintiffs as class and sub-class representatives under Rule 23 of the Federal Rules of Civil Procedure and their counsel as lead counsel, and designating Plaintiffs as representatives of the class and sub-class and their counsel of record as Class Counsel;

B. Declare that the Pension Fund's method of calculating compensation during periods of military service for purposes of determining contributions and liability for pension benefits is in violation of USERRA, 38 U.S.C. § 4318;

C. Declare that 38 U.S.C. § 4318 preempts any and all inconsistent NYC, NYPD, and Pension Fund rules, regulations, policies, and practices concerning the calculation of compensation during periods of military service and the calculation of pension benefits;

D. Order that the Pension Fund calculate compensation during periods of military service in accordance with USERRA, 38 U.S.C. § 4318;

E. Order that the Pension Fund recalculate compensation of sub-class members during periods of military service in accordance with USERRA, 38 U.S.C. § 4318;

F. Order that the Pension Fund calculate and inform Plaintiffs and sub-class members of the amount of pension contributions they may owe as a result of recalculating

compensation during the periods of their military service in accordance with USERRA, 38 U.S.C. § 4318;

G.  Order that the Pension Fund calculate and inform NYC and NYPD of the amount of additional pension contributions to the accounts of Plaintiffs and sub-class members that they may owe as a result of recalculating compensation during the periods of members' military service in accordance with USERRA, 38 U.S.C. § 4318;

H.  Order that NYC, the NYPD and the Pension Fund remit to Plaintiffs and sub-class members the additional pension benefits owed to them as a result of recalculating compensation during their periods of military service in accordance with USERRA, 38 U.S.C. § 4318;

I.  Award Plaintiffs and members of the sub-class prejudgment interest on the amount of pension benefits due; and

J.  Grant such other relief as may be just.


Dated:      August 2, 2012
            New York, New York

                                    PREET BHARARA
                                    United States Attorney

                        By:         _____
                                    TARA M. La MORTE
                                    ARASTU K. CHAUDHURY
                                    Assistant United States Attorneys
                                    86 Chambers Street, 3rd Floor
                                    New York, New York  10007
                                    Tel. No. (212) 637-2746
                                    Fax No. (212) 637-2702
                                    tara.lamorte2@usdoj.gov
                                    arastu.chaudhury@usdoj.gov
                                    Attorneys for Plaintiffs